UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIA CATLETT, TRACEY WHITE,
SEMERIA GREENE and JAMIA
ROBINSON,

        Plaintiffs,

v.

HEIDI WASHINGTON, STEVEN
ADAMSON, JEREMY HOWARD and
ANNETTE TELLAS in their individual and
official capacities,

        Defendants.

Case No. 20-13283

Paul D. Borman
United States District Judge

David R. Grand
United States Magistrate Judge

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (ECF No. 13)

### I.    Background

Plaintiffs Jamia Robinson, Julia Catlett, Tracy White, and Semeria Greene, are female inmates within the Michigan Department of Corrections ("MDOC"). Each Plaintiff wears a hijab or turban-style hijab pursuant to their Muslim or Moorish faith. (Amended Complaint, ECF No. 6 PageID.45 ¶¶ 17, 18.) Plaintiffs filed an Amended Class Action Complaint for Declaratory and Injunctive Relief and Damages for Plaintiffs on January 25, 2021. (ECF No. 6.) Plaintiffs bring claims under: Count I, the Religious Land Use and Institutionalized Persons Act (RLUIPA), 41 U.S.C. § 2000 et seq.; Count II, the First Amendment to the U.S. Constitution's Free Exercise Clause, 42 U.S.C. § 1983; and Count III, the Michigan State

1

Constitution, Art. I Sec. 4. Count IV seeks declaratory judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201-02.

Plaintiffs allege that the MDOC's Prisoner Photographic Identification Policy "forces prisoners who wear religious head coverings to remove those head coverings for a photograph, even when doing so violates the sincerely held religious beliefs of those prisoners." (*Id*. ¶ 16.) MDOC permits the wearing of hijabs within its prison facilities.

On May 16, 2011, MDOC implemented a Prisoner Photographic Identification Policy to establish protocols for taking photographs of prisoners for their processing and identification. (*Id*. ¶ 27.) Section 04.04.133(B) of the Photographic Identification Policy states that when an individual is processed into the MDOC, a photo shall be taken of a prisoner's face, and directs that "headgear shall not be worn." (*Id*. ¶ 28.) Plaintiffs allege that they are required to carry these identification photos, that the photos are also maintained in the prisoner's files, in the Counselor's office, and in the Offender Management Network Information system ("OMNI"), which creates a "permanent public record" of a prisoner's identification photograph. Further, the photographs are published on a public website known as the Offender Tracking Information System ("OTIS"), which is available for search by the public. (*Id*. ¶ 30.) Plaintiffs allege that they were each subjected to this photographic policy requiring them to remove their religious head

2

coverings for those identification photographs in violation of their sincerely held religious beliefs. (*Id*. ¶ 48–51.)

Plaintiffs' Class Action Complaint names as Defendants, Heidi Washington, Director of MDOC, Steven Adamson, Special Activities Coordinator at MDOC, Jeremy Howard, acting Warden of Women's Huron Valley Correctional Facility ("WHV"), and Annette Tellas, Chaplain at WHV. Each Defendant is sued in his or her individual and official capacities. On February 17, 2021, Defendants filed this Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 13.)

On August 3, 2021, this Court issued an Opinion and Order dismissing: (1) the First Amendment and RLUIPA claims against Defendants Adamson, Howard, and Tellas in their individual capacities, (2) the First Amendment and RLUIPA claims for damages against all defendants in his or her official capacities, and (3) the Michigan State Constitution claims against all defendants in their individual capacities for damages. (ECF No. 22.)

On August 11, 2021, this Court held a virtual Zoom oral argument hearing regarding the remaining issues in the Defendants' Motion to Dismiss. During that hearing, the Defendants confirmed that they did not move to dismiss the RLUIPA and First Amendment claims against Defendants in their official capacities for injunctive and declaratory relief.

3

## II. Standard of Review

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). Sixth Circuit "precedent instructs that, for a complaint to survive such motions, it must contain 'either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.' " *Buck v. City of Highland Park, Michigan*, 733 F. App'x 248, 251 (6th Cir. 2018) quoting *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.' " *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted). In other words, a plaintiff must provide more than "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. The Sixth Circuit has reiterated that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal

liability." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When ruling on a motion for judgment on the pleadings or a motion to dismiss, courts "primarily consider[ ] the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case," and attachments that are "referred to in the plaintiff's complaint and are central to her claim" are included in the complaint. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (internal quotations omitted).

### III. Analysis

#### a. 42 U.S.C. § 1983 and RLUIPA Claims Against MDOC Director Heidi Washington in her Individual Capacity

In order to state a claim against an individual officer under both 42 U.S.C. § 1983 and the RLUIPA, a plaintiff must allege facts in the complaint, taken as true, which demonstrate the personal involvement of that individual officer in the alleged violation. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Greenberg v. Hill*, No. CIV.A. 2:07-CV-1076, 2009 WL 890521, at *3 (S.D. Ohio Mar. 31, 2009) ("In order to establish liability under RLUIPA (and Section 1983), a

5

plaintiff must prove, among other things, the personal involvement of each defendant in the alleged violation.") (citations omitted); *Copenhaver v. Burnett*, No. CIV.A.07-CV-14376, 2008 WL 2741807, at *3 (E.D. Mich. July 11, 2008) ("under the RLUIPA plaintiff must show that the named defendants personally imposed a substantial burden on his free exercise of religion.").

The Amended Complaint, which often refers to the individual Defendants as a collective "Defendants," contains one specific allegation against Defendant Heidi Washington, Director of MDOC:

> ¶ 65 Defendant Washington's policies, practices, actions, and omissions that form the basis of the Class are common to and apply generally to all members of the class. The policy and practices of requiring the "hijab" to be removed when photographs are taken is centrally promulgated, disseminated, and enforced from the headquarters of Defendant Washington.

In their Motion to Dismiss and Reply brief, Defendants fail to recognize that this allegation appears in the Amended Complaint.

An individual supervisory officer may be held individually liable for formulating or continuing the operation of unconstitutional policies. At a minimum a plaintiff "must show that a supervisory official at least implicitly authorized, approved[,] or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *See also Loy v. Sexton*, 132 F. App'x 624, 628 (6th Cir. 2005) ("A supervisory

official can be liable under § 1983 for formulating or tolerating unconstitutional policies.").

The Court finds that the specific allegations against Defendant Washington in paragraph 65 of the Amended Complaint are sufficient to state a claim under § 1983 and the RLUIPA. By alleging that the Photographic Policy was promulgated by and enforced from the headquarters of Defendant Washington, the Plaintiffs have plausibly alleged "that a supervisory official [Washington] at least implicitly authorized, approved[,] or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421.

### 1. Qualified Immunity

Defendants argue that, even if the Plaintiffs have plausibly alleged the personal involvement of Defendant Washington, she is nonetheless entitled to qualified immunity because the Plaintiffs' right to not be required to remove religious headgear when taking identification photographs is not "clearly established." Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Green v.*

7

*Throckmorton*, 681 F.3d 853, 864 (6th Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

Courts follow a "two-step inquiry" to determine whether qualified immunity applies. *Ferris v. City of Cadillac, Mich.*, 726 F. App'x 473, 478 (6th Cir. 2018) (citing *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013)). "First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right? Second, is the right clearly established?" *Seales v. City of Detroit, Mich.*, 724 F. App'x 356, 359 (6th Cir. 2018) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

This Court may address these prongs in either order. *Pearson*, 555 U.S. at 236. "If either prong is not met, then the government officer is entitled to qualified immunity." *Doe v. Miami Univ.*, 882 F.3d 579, 604 (6th Cir. 2018) (citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)). "Once raised, it is the plaintiff's burden to show that the defendant[ ] [is] not entitled to qualified immunity." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

"To survive [a] motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that 'plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that

8

right." *Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887, 898 (6th Cir. 2019). "The test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Id.* at 899.

Regarding the constitutional violation prong, plaintiffs have sufficiently alleged facts in the Amended Complaint that plausibly allege that their Muslim or Moorish faith requires the wearing of a hijab when the wearer is in the presence of men who are not part of her immediate family, and that being forced to remove their hijab to take an identification photograph, to carry around that photograph as identification throughout the period of incarceration, as well as having that photograph posted on a public database (OTIS) violates their sincerely held religious beliefs. (ECF No. 6 at ¶¶ 19–26.) Thus, a constitutional violation has been plausibly alleged.[1]

Regarding the "clearly established" prong, Defendants argue that it is not clearly established that a prison policy that requires all inmates to remove religious headwear to take an identification photograph violates the First Amendment. In Response, Plaintiffs argue that "[n]umerous courts have found that the wearing of

---

[1] At the hearing on the Motion to Dismiss, Counsel for Defendant stated that since this case was filed, MDOC removed photographs of the named Plaintiffs from the public database (OTIS) during the pendency of this case until determination is made by the Court with regard to the validity of that publication.

religious head gear that is required by a sincere religious belief, and where prison staff have failed to state a legitimate penological interest, is constitutionally protected." (ECF No. 20 PageID.387.) Defendants, at this stage, do not respond to this argument regarding the necessity of setting forth a penological interest to justify this restriction on religious expression in the prison setting. The Court reiterates that MDOC permits female Muslim prisoners to wear a hijab at all times during the service of their prison sentence.

The Supreme Court established in *Turner* that prison regulations cannot arbitrarily and capriciously impinge on inmates' constitutional rights. *Turner v. Safley*, 482 U.S. 78, 89 (1987). To be valid, a regulation must be "reasonably related to legitimate penological interests." *Id.; see also Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019) ("where an inmate challenges prison policies under the Free Exercise Clause, Supreme Court precedent instructs us to follow the standard formulated in *Turner v. Safley*"); *Brown v. Johnson*, 743 F.2d 408, 411–12 (6th Cir. 1984) ("Where an inmate's religious freedom is at stake, correctional officials may only adopt regulations which are 'reasonably and substantially' justified by official concern for internal security and inmate discipline.").

The Sixth Circuit has noted that it is "generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity," preferring instead that courts resolve the issue at summary judgment. *Wesley v.*

10

*Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). In a case such as this, "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify." *Pearson,* 555 U.S. at 238–39. While "certain immunity questions can still be resolved at the pleading stage with a sufficiently developed record," this is not one of those cases. *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017).

In *Pleasant-Bey v. Shelby Cty*, 2019 WL 5654993 (W.D. Tenn. Oct. 31, 2019), the plaintiff, a Muslim inmate who wore a kufi cap for religious reasons brought suit under § 1983 against the county and individual officers, challenging a prison policy restricting his ability to wear his religious headgear at all times. Ruling on a motion for judgment on the pleadings, the district court denied qualified immunity, reasoning that "many other Circuits have held that restrictions on religious headgear (like a kufi) are valid when the defendants state a legitimate penological interest in doing so." *Id.* at *3. Given that the Defendants in that case had not made a showing of any penological interest at the pleadings stage, the court held that "[w]ithout a legitimate penological interest in preventing Plaintiff from wearing his kufi, Plaintiff states a claim for relief under 42 U.S.C. § 1983, and [individual defendants] have no right to judgment on the pleadings based on qualified immunity." *Id.* at *4.

It is clear that absent a legitimate penological interest, prison officials may not infringe on sincerely held religious beliefs. Because the Defendants have not

11

directed this court to an MDOC penological interest for the Photograph Policy, and failed to acknowledge this legal requirement in their briefs, granting qualified immunity at this stage would be inappropriate. *See Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J, concurring) (observing that it is generally "difficult for a defendant to claim qualified immunity on the pleadings *before discovery* and before the parties (much less the courts) know what is being balanced against what.") (emphasis in original); *Boles v. Neet*, 486 F.3d 1177, 1184 (10th Cir. 2007) ("Warden Neet's actions were reasonable and he is entitled to qualified immunity only if the regulation that he relied on was reasonably related to a legitimate penological interest. Since, as we have already held, there is nothing in the record to indicate as much, he has not established the defense of qualified immunity.")

Accordingly, Defendants' Motion to Dismiss the First Amendment claim brought under 28 U.S.C. § 1983 against Defendant Heidi Washington is DENIED.

### 2. Availability of Damages on the Individual Capacity RLUIPA Claim

The parties dispute the effect of a recent U.S. Supreme Court decision, *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020), on the availability of damages for individual capacity claims under the RLUIPA.

In *Sossamon v. Texas*, 563 U.S. 277, 288 (2011), the Supreme Court held that sovereign immunity was not waived by Congress in the enactment of the RLUIPA, and thus, suits for money damages against officials in their official capacities were barred by Eleventh Amendment sovereign immunity.

Relying on the Supreme Court's reasoning in *Sossamon*, the Sixth Circuit in *Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014), held that the RLUIPA does not permit individual capacity suits for money damages: "Congress's failure to speak so clearly here renders any putative individual-capacity, money-damages condition in RLUIPA *in*appropriate." (emphasis in original).

Most recently, in *Tanzin*, while addressing a claim under a separate statute, the Religious Freedom Restoration Act (RFRA), which contains an identical "appropriate relief" clause as the RLUIPA, the Supreme Court concluded that RFRA allows money-damages suits against officials sued in their individual capacities. 141 S. Ct. at 492. The Court explicitly stated that this decision was not in conflict with *Sossamon*. *Id.* at 492–93. Thus, *Tanzin* does not expressly overrule *Haight*, nor does it mention the RLUIPA.

Two District Courts in the Sixth Circuit that have addressed this issue post-*Tanzin* have reached different conclusions regarding its effect on the availability of damages for individual capacity claims under the RLUIPA.

In *Ruplinger v. Louisville/Jefferson Cty. Metro Gov't*, No. 3:19-CV-583-DJH-RSE, 2021 WL 682075 (W.D. Ky. Feb. 22, 2021), a district court in the Western District of Kentucky held that the plaintiff's claim for damages under the RLUIPA was not barred by Eleventh Amendment immunity. In *Ruplinger*, the Plaintiff was arrested for protesting, and alleged that she was improperly required to remove her headscarf during the booking process. Plaintiff Ruplinger brought claims alleging violations of the First Amendment, the RLUIPA, and the Kentucky Religious Freedom Restoration Act. The district court, in the absence of Sixth Circuit guidance following *Tanzin*, purportedly followed the analysis set out in *Tanzin* and held that that "[s]ince Louisville Metro Government is not protected by Eleventh Amendment immunity … the *Sossamon* decision does not bar [Plaintiff's] money-damages claim … under RLUIPA." *Id.*, at *4.

However, in *Mease v. Washington*, No. 2:20-CV-176, 2021 WL 1921071 (W.D. Mich. May 13, 2021), a district court in the Western District of Michigan held that because *Tanzin* did not expressly overrule *Haight*, and because the reasoning applied in *Tanzin* was different than that in *Haight*, the plaintiff was not entitled to bring a claim for money damages against officers in their individual capacities under the RLUIPA. The court reasoned:

> Regardless of whether *Haight*'s analysis is more persuasive than the analysis of the other courts, *Haight*'s determination that RLUIPA does not authorize damages against state officials in their individual capacity was not

14

> expressly overruled by *Tanzin*. Moreover, the basis of the *Haight* court's decision—the need for clarity in statutes promulgated under the Spending and Commerce Clauses—did not apply in *Tanzin*. As a consequence, *Tanzin* did not abrogate *Haight*, which remains controlling authority in this circuit. Plaintiff therefore is not entitled to damages against Defendants in their individual capacities for the alleged violations of RLUIPA.

*Id*. at *16.

The Court finds the reasoning in *Mease* persuasive. *Haight* remains binding on this Court, and in following that decision, the Court rules that Plaintiffs are unable to bring a claim for money damages under the RLUIPA against officers in their individual capacities.

Accordingly, Defendants' Motion to Dismiss the individual capacity claim against Defendant Heidi Washington for damages under the RLUIPA is GRANTED.

### b. Michigan State Constitution Claim – Supplemental Jurisdiction

Defendants argue that this court should decline to exercise supplemental jurisdiction over the Michigan State Constitution claim. A federal court may exercise supplemental jurisdiction over each claim in an action that shares a common nucleus of operative facts with a claim that invokes the court's original jurisdiction. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966). However, supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's

right." *Id.,* at 726. Justification for this doctrine "lies in considerations of judicial economy, convenience, and fairness to litigants." *Id.*

Under 28 U.S.C. § 1367 The district courts may decline to exercise supplemental jurisdiction over a claim" if:

> **(1)** the claim raises a novel or complex issue of State law,
> **(2)** the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> **(3)** the district court has dismissed all claims over which it has original jurisdiction, or
> **(4)** in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Here, it appears that this case raises a novel issue of state law regarding whether the state prison policy requiring all inmates to remove religious headwear for identification photographs violates the Michigan Constitution, Art I, Sec 4.

Michigan courts have interpreted the free exercise protections in the Michigan Constitution to provide broader coverage than that of the United States constitution. "[Courts] apply the compelling state interest test (strict scrutiny) to challenges under the free exercise language in [Mich.] Const. art. 1, § 4, regardless of whether the statute at issue is generally applicable and religion-neutral." *Champion v. Sec. of State*, 281 Mich. App. 307 (2008) citing *Reid v. Kenowa Pub. Schs.*, 261 Mich. App. 17 (2004). Given the importance of resolving novel issues of State law in the State Courts, this Court will exercise its discretion under 28 U.S.C. § 1367(c)(1) to decline

16

to exercise supplemental jurisdiction over the Michigan State Constitution claim. Accordingly, the Michigan State Constitution claim against all Defendants in their official capacities is DISMISSED without prejudice.

## IV. Conclusion

(1) Defendants' Motion to Dismiss the First Amendment claim under 42 U.S.C. § 1983 against Defendant Heidi Washington in her individual capacity is DENIED;

(2) Defendants' Motion to Dismiss the claim under the RLUIPA against Defendant Heidi Washington in her individual capacity for damages is GRANTED;

(3) This Court declines to exercise supplemental jurisdiction over the Michigan State Constitution claim against all Defendants in their official capacities.

SO ORDERED.

                                                       s/Paul D. Borman
                                                       Paul D. Borman

Dated: August 19, 2021               United States District Judge