UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JULIA CATLETT, TRACEY WHITE, SEMERIA GREENE and JAMIA ROBINSON, | Case No. 20-cv-13283 |
|       Plaintiffs, | Paul D. Borman |
| v. | United States District Judge |
| HEIDI WASHINGTON, STEVEN ADAMSON, JEREMY HOWARD and ANNETE TELLAS in their individual and official capacities, | David R. Grand United States Magistrate Judge |
|       Defendants. | |

**OPINION AND ORDER DENYING DEFENDANT HEIDI WASHINGTON'S MOTION FOR RECONSIDERATION (ECF NO. 26)**

**INTRODUCTION**

  This case arises out of the Michigan Department of Corrections' Prisoner Photographic Identification Policy. Plaintiffs allege that this Policy violates their rights under RLUIPA, the Free Exercise Clause of the First Amendment of the United States Constitution, and Article 1, Section 4 of the Michigan Constitution. On August 19, 2021, this Court denied Defendant Heidi Washington's claim to qualified immunity on the Free Exercise claim. Now before the Court is Washington's Motion for Reconsideration of that decision.

1

I.  BACKGROUND

   A. Order Denying Dismissal

On August 19, 2021, the Court denied Defendant's claim—brought in her Motion to Dismiss (ECF No. 13)—to qualified immunity as to Plaintiffs' Free Exercise cause of action. (ECF No. 24, Opinion and Order). After outlining the "two-step inquiry" that courts use to evaluate claims to qualified immunity, the Court noted that "'[o]nce raised, it is the plaintiff's burden to show that the defendant[ ] [is] not entitled to qualified immunity.'" (ECF No. 24, PageID 477) (quoting *Kinlin v. Kline*, 749 F.3d 673, 577 (6th Cir. 2014)) (alterations original). The Court then explained that "'[t]o survive [a] motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that "plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right.'" (ECF No. 24, PageID 478) (citing *Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887, 898 (6th Cir. 2019)) (alterations original).

On the first step of the qualified immunity analysis, the Court found that Plaintiffs had "sufficiently alleged facts in the Amended Complaint that plausibly allege[d] that . . . [the challenged Policy] violate[d] their sincerely held religious beliefs." (ECF No. 24, PageID 478).

The Court also found in favor of Plaintiffs on the second step. The Court observed that "[t]he Sixth Circuit has noted that it is 'generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity,' preferring instead that courts resolve the issue at summary judgment." (ECF No. 24, PageID 479) (quoting *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)). Then the court added: "[w]hile 'certain immunity questions can still be resolved at the pleading stage with a sufficiently developed record,' this is not one of those cases." (ECF No. 24, PageID 480) (quoting *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017)).

The Court based its second-step determination on *Turner*, a Supreme Court case holding that prison regulations may not "impinge on inmates' constitutional rights" unless the regulations are "'reasonably related to legitimate penological interests.'" (ECF No. 24, PageID 479) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)) (also citing *Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019) and *Brown v. Johnson*, 743 F.2d 408, 411–12 (6th Cir. 1984)). The Court also presented *Pleasant-Bey*, 2019 WL 5654993 (W.D. Tenn. Oct. 31, 2019), as an example of *Turner*'s application. In *Pleasant-Bey*, the Court relayed, a Tennessee district court denied qualified immunity on a motion for judgment on the pleadings where the challenged prison policy restricted the plaintiff's ability to wear a kufi at all times and "the Defendants . . . had not made a showing of any penological interests." (ECF

3

No. 24, PageID 480) (citing *Pleasant-Bey*, 2019 WL 5654993, at *3–4). The Court summed up: "[i]t is clear that absent a legitimate penological interest, prison officials may not infringe on sincerely held religious beliefs." (ECF No. 24, PageID 480).

From there, the Court concluded that, "[b]ecause the Defendants have not directed this court to an MDOC penological interest for the Photograph Policy, and failed to acknowledge this legal requirement in their briefs, granting qualified immunity at this stage would be inappropriate." (ECF No. 24, PageID 480–81) (citing *Evans-Marshall v. Bd. Of Educ. Of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring) and *Boles v. Neet*, 486 F.3d 1177, 1184 (10th Cir. 2007)).

### B. Motion for Reconsideration

Two weeks later, on September 2, 2021, Defendant moved for Reconsideration. She argued:

> In denying qualified immunity to Defendant Washington, this Court committed at least two mistakes that rise to the level of palpable error. First, to the extent this Court found that it is premature to grant qualified immunity on a 12(b)(6) motion to dismiss, that decision amounts to palpable error because it is well settled that qualified immunity should be decided at the earliest possible stage of a case, including when the defense is raised in a 12(b)(6) motion to dismiss. Second, this Court erred when it found that Defendant Washington was required to demonstrate that the MDOC's photograph policy served a legitimate penological interest in order to receive qualified immunity, because (a) the plaintiff, not the defendant, has the burden to demonstrate clearly established law once a defendant asserts qualified immunity, and (b) the district court was required to decide whether the rights at issue in

4

> this case are clearly established, not whether MDOC's photograph policy is supported by a legitimate penological interest.

(ECF No. 26, Motion for Reconsideration, PageID 499). The Court requested that Plaintiffs file a response (ECF No. 27), which they did on September 15th (ECF No. 31).

## II. LEGAL STANDARD

The Eastern District of Michigan will only grant motions for reconsideration if they "not only demonstrate a palpable defect by which the Court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. Local Rule 7.1(h)(3). "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *Mich. Dep't of Env't Quality v. City of Flint*, 296 F. Supp. 3d 842, 847 (E.D. Mich. 2017) (citations omitted). "Generally, . . . the Court will not grant motions for . . . reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. Local Rule 7.1(h)(3).

## III. ANALYSIS

### A. The Opinion did not contain a palpable defect in finding that it was premature to grant qualified immunity.

**Defendant's Argument**

The Defendant labels erroneous the following part of the Opinion:

> The Sixth Circuit has noted that it is "generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity," preferring instead that courts resolve the issue at summary judgment. *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). In a case such as this, "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis of the plaintiff's claim or claims may be hard to identify." *Pearson*, 555 U.S. at 238–39. While "certain immunity questions can still be resolved at the pleading stage with a sufficiently developed record," this is not one of those cases. *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017).

(ECF No. 26, Motion for Reconsideration, PageID 500). She argues that "to the extent this Court relied on *Wesley*[], 779 F.3d [at] 433[] to find that it was inappropriate to grant qualified immunity on a 12(b)(6) motion to dismiss, this Court committed palpable error." (ECF No. 26, PageID 500).

Defendant contends that "[t]he Supreme Court has spoken clearly on this issue and has stated on numerous occasions that it is preferred, if not mandatory, for district courts to decide purely legal issues related to whether the law was 'clearly established' for purposes of qualified immunity at the earliest possible stage of litigation." (ECF No. 26, PageID 500). Further, she notes that "[t]he Supreme Court

6

has repeatedly declared in no uncertain terms that qualified immunity is not merely a defense to liability but rather 'an entitlement not to stand trial *or face the other burdens of litigation*' prior to 'the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law.'" (ECF No. 26, PageID 503) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis added in Defendant's Motion). Therefore, she states, "[o]nce a defendant invokes qualified immunity in a motion to dismiss, district courts are *required* to issue a final ruling on whether the law was clearly established so that the defendant may have an opportunity to immediately appeal the decision." (ECF No. 6, PageID 502) (citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).

Defendant then reasons that "[w]ith this long backdrop of Supreme Court jurisprudence in mind, any suggestion by the Sixth Circuit panel in *Wesley* that it is 'generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity' can only be dicta." (ECF No. 26, PageID 504) (citation omitted). And she adds that "the term 'generally inappropriate' does not foreclose the possibility of rendering a decision." (ECF No. 26, PageID 504).

According to the Defendant, "it is clear from the pleadings that Defendant [] is entitled to qualified immunity, since the only prong of the qualified immunity test that Defendants asked this Court to consider was whether 'the MDOC Defendants violated clearly established law,' and since . . . the MDOC Defendants did not

7

contest the unambiguous facts alleged in the complaint." (ECF No. 26, PageID 501) (citation omitted). She continues: "[t]his Court, therefore, was required to take the facts in the amended complaint and in the MDOC policy directive as true and decide whether 'there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point.'" (ECF No. 26, PageID 505–06) (quoting *Wenk v. O'Reilly*, 783 F.3d 585, 598 (6th Cir. 2015)).

**Plaintiffs' Response**

Plaintiffs argue that Defendant misconstrued the Opinion where she suggested that the Court "decided that a determination on whether the law was clearly established is premature." (ECF No. 31, Response to Motion for Reconsideration, PageID 532) (quoting ECF No. 26, Motion for Reconsideration, PageID 506). They assert that the "Court *did* establish that Washington violated Catlett's right to have their sincerely held religious belief from being infringed on," and that "[b]ecause [Defendant] did not supply a penological interest in neither her motion or reply, there is a question of fact to whether [Defendant] had a penological interest in implementing and enforcing the Photography Policy." (ECF No. 31, PageID 533) (emphasis original). They then note that the Opinion "presented . . . *Pleasant-Bey*, where it was held in that case it was clearly established in 2019 that enforcing a policy that restricts inmates from wearing their religious headwear at all times is a violation of clearly established law," and that the "Court found other Circuits that

show that prison officials are entitled to qualified immunity [only] if they show a valid penological interest in infringing on Inmates religious rights by way of the Photography Policy." (ECF No. 31, PageID 534) (internal citations omitted). Therefore, they conclude that the Opinion "did not commit a palpable error by stating that this case is not one in which qualified immunity should be granted at the pleading stage." (ECF No. 21, PageID 535).

**Decision**

The Defendant's argument fails to identify a defect for two reasons. First, the Opinion did not suggest that qualified immunity cannot or even should not be decided at the earliest stage of the case possible; to the contrary, the Opinion explicitly acknowledged that "certain immunity questions *can* [] be resolved at the pleading stage with a sufficiently developed record." (ECF No. 24, Opinion and Order, PageID 480). The Opinion merely pointed out that, in practice, a lack of record development often precludes a finding of qualified immunity at the motion to dismiss stage. (ECF No. 24, PageID 479–80). Second, the Opinion did not fail to rule on Defendant's assertion of qualified immunity: the Opinion denied it, finding that Plaintiffs plausibly alleged a violation of a clearly established constitutional right. (ECF No. 24, Page 478–81).

> **B. The Opinion did not create a palpable defect by shifting a burden from Plaintiffs to Defendant, nor by focusing on whether Defendant's policy had a legitimate penological interest.**

**Defendant's Argument**

Defendant argues that "[b]y requiring Defendant [] to put forward a legitimate penological interest in defense of the MDOC's photograph policy, this Court erred by both (a) flipping the burden to show clearly established law on to Defendants and (b) [] focusing on whether the MDOC policy supports a legitimate penological interest instead of focusing on whether any of the rights at issue were clearly established." (ECF No. 26, Motion for Reconsideration, PageID 506). "Specifically," Defendant takes issue with the line: "'Because the Defendants have not directed this court to an MDOC penological interest for the Photograph Policy, and failed to acknowledge this legal requirement in their briefs, granting qualified immunity at this stage would be inappropriate.'" (ECF No. 26, PageID 507) (quoting ECF No. 24, Opinion and Order, PageID 480–81).

Defendant asserts that she "was not required to show that the photograph satisfied the *Turner* test, nor was it her burden to show the law was clearly established." (ECF No. 26, PageID 507) (citation omitted). She claims:

> The *Turner* test would only be relevant to the qualified immunity analysis if the MDOC Defendants had argued that they were entitled to qualified immunity based on the first prong of the test. But the MDOC Defendants only argued in their motion to dismiss that the law was not clearly established. (ECF No. 13, PageID.102-107.) Thus, *Plaintiffs* had the burden of demonstrating that the law was clearly established by producing

10

a case that constitutes "binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." *Wenk*, 783 F.3d at 598.

(ECF No. 26, PageID 508).

Then, Defendant criticizes the Court (and Plaintiffs) for citing *Pleasant-Bey* "[i]n support of the determination that the law in this case was clearly established." (ECF No. 26, PageID 508). She argues that *Pleasant-Bey* is "inapposite" because its facts differ from those in this case—it dealt with whether "a prisoner had the right to wear religious headwear in the first place and had nothing to do with a photograph policy"—and because it is a Tennessee federal district court case, and thus "do[es] not constitute clearly established law." (ECF No. 26, PageID 509) (quoting *Pleasant-Bey*, 2019 WL 5654993, at * 3).

Ultimately, Defendant protests that "she was not on notice that she was potentially violating the constitution." (ECF No. 26, PageID 509). She states that "[i]t was reasonable for [her] to assume that the MDOC's photograph policy would not subject her to money damages in her personal capacity, because there is no case on point that clearly establishes that her conduct violates the Constitution." (ECF No. 26, PageID 510). She adds that, even though she did not have to, she "cited to numerous cases in [her] motion to dismiss that held that . . . the law on this issue is *not* clearly established." (ECF No. 26, PageID 510).

11

**Plaintiff's Response**

Plaintiffs reiterate some of the same points from the first section of their Response, lay out the four factors of the full *Turner* test, and then assert that they "ha[d] satisfied the burden of proof showing that the defendant is not entitled to qualified immunity" because "there is no question that a religious belief to wear religious headwear in photograph is clearly an established right" and "Defendant "ha[d] failed to show any sort of penological interest regarding the policy thus automatically disqualifying [her] from qualified immunity." (ECF No. 31, Response to Motion for Reconsideration, PageID 535–38). "Therefore," they conclude, "this Court did not err in deciding that Defendant Washington violated clearly established law." (ECF No. 31, PageID 538).

**Decision**

Defendant is incorrect in her assertions that the Court created a palpable defect by imposing an undue burden on Defendant, that the Court should not have focused on whether the MDOC policy supports a legitimate penological interest, that *Pleasant-Bey* is inapposite, and that based on the record at this stage, she was not on notice of the illegality of her actions.

The Opinion properly stated: "'Once raised, it is *the plaintiff's burden* to show that the defendant[ ] [is] not entitled to qualified immunity.'" (ECF No. 24, Opinion and Order, PageID 477) (quoting *Kinlin*, 749 F.3d at 577) (alterations original)

12

(emphasis added). It also correctly recognized that, "'[t]o survive [a] motion to dismiss on qualified immunity grounds, *the plaintiff* must allege facts that plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right.'" (ECF No. 24, PageID 477–78) (quoting *Cahoo*, 912 F.3d at 898) (alterations original) (emphasis added).

However, the Opinion arguably confused these burdens when it based its decision in part on the fact that "Defendants ha[d] not directed th[e] [C]ourt to an MDOC penological interest for the Photograph Policy, and failed to acknowledge this legal requirement in their briefs." (ECF No. 24, PageID 480–81). According to Rule 12(b)(6) and the preceding paragraph, a motion to dismiss evaluates whether facts in *the plaintiff's Complaint* state a claim for relief. Here, the Opinion did not mention anything in the Complaint that suggested that MDOC did not have a penological purpose for its policy—the Opinion focused only on the absence of a justification in *Defendant's post-Complaint filings*. The Opinion may have focused on what Defendant did not say, rather than on what Plaintiffs did say, in order to emphasize the fact that a grant of qualified immunity was unwarranted at this stage because the Court could not consider evidence to counterbalance the Complaint, or to suggest that a grant of qualified immunity might become appropriate after Defendant produces discovery. Or, viewed in another light, the Opinion might have

13

considered the Defendant's silence to be evidence in itself, in which case the Opinion would have erred by not restricting its analysis to the Complaint.

Either way, this was not a "palpable defect." Because it could be argued that the Opinion applied the proper burden, any defect on this point is neither "obvious" nor "plain." E.D. Mich. Local Rule 7.1(h)(3).

Additionally, if there was a defect, it did not "result in a different disposition of the case." E.D. Mich. Local Rule 7.1(h)(3). The Amended Complaint, viewed in the light most favorable to the Plaintiffs, plausibly alleged that the Photograph Policy did not have any legitimate penological interests. To begin with, it is not clear that the Court must assume that the Policy had a penological interest unless the Plaintiff plausibly alleges otherwise. Furthermore, Plaintiffs explicitly stated that the Policy "lacks a penological justification" early in the Complaint. (ECF No. 6, Amended Complaint, PageID 45). More persuasively, they asserted that "MDOC's Photograph Policy contravenes national norms and practices," and then provided three pages of examples that "reflect[] a growing national consensus that there is no basis to require the removal of religious head coverings for official government photographs."(ECF No. 6, PageID 49–52). Lastly, the Policy itself—which Defendant attached to her Motion to Dismiss, and which the Court could consider because the Complaint "reference[d]" it, *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014)—states that "photographs shall be taken by the Department for identification

14

purposes," but does not provide any rationale for its prohibition of "headgear." (ECF No. 13-2, Photograph Policy, PageID 118).

The rest of Defendant's challenges fail to identify any defects. The Opinion did not err in relying on *Turner*, which clearly establishes that a prison regulation cannot "impinge[] on inmates' constitutional rights" unless such impingement "is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.[1] Contrary to Defendant's argument (ECF No. 26, PageID 510), Plaintiffs did not need a case any more "on point" than that one. Indeed, the Supreme Court has explained that the "clearly established" standard revolves around "whether the state of the law gave [officials] fair warning that their alleged treatment of [the plaintiff] was unconstitutional," *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), and it has recognized that "general statements of the law are not inherently incapable of giving fair and clear warning," *United States v. Lanier*, 520 U.S. 259, 271 (1997).

The Opinion's discussion of *Pleasant-Bey* did not suggest that that district court case alone "clearly established" the law at issue here; instead, it exemplified

---

[1] The full quote in *Turner* reads as follows: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. However, the context in that case, and the Sixth Circuit cases interpreting it, have clarified that such regulations are valid *only* if they meet that test. *See id.* at 85–89; *Maye*, 915 F.3d at 1083.

15

how the "clear warning" in *Turner* can apply to novel factual circumstances. (ECF No. 24, PageID 480). *Pleasant-Bey* found:

> Defendants' contention that the right to wear a kufi is not clearly established ignores the constitutional mandate that prison policies infringing on a prisoner's right to exercise his religion must be rationally related to legitimate penological interests. And the cases Defendants cite upholding prison restrictions on religious headgear are distinguishable from this case—the defendants in those cases proffered a legitimate penological interest in each case when the Court found that the prison officials did not violate the prisoner's constitutional rights.

*Pleasant-Bey*, 2019 WL 5654993, at *3 (internal citation omitted). That case's *analysis* mirrors this Opinion's analysis, even if its facts do not exactly mirror these facts. Both *Pleasant-Bey* and the Opinion here rely on the following, clearly established rule, which comes from *Turner*: "absent a legitimate penological interest, prison officials may not infringe on sincerely held religious beliefs." (ECF No. 24, Opinion and Order, PageID 480). In other words, *Turner* alone is enough to clearly establish the constitutional violation alleged in this case; the Opinion cites *Pleasant-Bey*—and *Boles*, from the Tenth Circuit—as additional, but not necessary, illustrations and reinforcements of *Turner*'s controlling authority. (ECF No. 24, PageID 480–81); *see also Boles*, 486 F.3d at 1184 ("Warden Neet's actions were reasonable and he is entitled to qualified immunity only if the regulation that he relied on was reasonably related to a legitimate penological interest. Since, as we have already held, there is nothing in the record to indicate as much, he has not established the defense of qualified immunity.").

16

Finally, the Opinion's finding that Defendant may have violated clearly established law was not defective. Plaintiff's Complaint plausibly alleges that Defendant violated "clearly established" law because: she knew (or should have known) about *Turner's* rule; she promulgated a Photograph Policy that impinged upon Plaintiffs' religious rights; and that Policy served no legitimate penological interest. As *Pleasant-Bey* explains, this determination may change if or when "[D]efendant[] proffer[s] a legitimate penological interest for" the Policy, but for now, "[w]ithout a legitimate penological interest in [the Policy], Plaintiff[s] state[] a claim for relief . . . and [Defendant] ha[s] no right to judgment [at this stage] based on qualified immunity." *Pleasant-Bey*, 2019 WL 5654993, at * 4; *see also Chaban v. City of Detroit*, 2021 WL 4060986 (E.D. Mich. Sept. 7, 2021) (Edmunds, J.) (citing *Turner* and denying qualified immunity at the motion to dismiss stage in an opinion issued shortly after this Court's Opinion, in a case with very similar facts to those at issue here).

17

**CONCLUSION**

For the reasons discussed above, the Court DENIES the Defendant's Motion for Reconsideration.

**IT IS SO ORDERED.**


Dated: October 6, 2021                          s/Paul D. Borman
                                                Paul D. Borman
                                                United States District Judge